By the Court
(Kinkade, J.).
The plaintiffs in error applied to the Public Utilities Commission for an order requiring the Wheeling & Lake Erie Railway Company to comply with the provisions of Section 12553, General Code, known as the Passenger Full Crew Law, which reads as follows:
“Whoever, being superintendent, trainmaster, or other employe of a railroad company, sends or causes to be sent outside of yard limits, a passenger train of not more than five cars, any one of which carries passengers, with a crew consisting of less than one engineer, one fireman, one conductor and one brakeman, and if four of said cars are day coaches carrying passengers, or if in a train of more than five cars, three or more of which are day coaches carrying passengers, or a train of more than six cars, four of which are carrying passengers, or a train of more than seven cars, two or more of which are carrying passengers, or any train with six or more cars carrying passengers with less than one additional brakeman; regularly employed as such, of, if when more than two cars, either of which carries passengers, requires a brakeman to perform the duties of baggage master or express agent, shall be fined not less than twenty-five ($25.00) dollars for each offense.
*338 “For the purpose of this act, a combination mail or baggage and passenger car shall be regarded as a day coach, but straight dining cars and private cars shall not be regarded as cars carrying passengers.”
It was contended before the commission that the railroad company was violating this section of the statute, in this, that it was running a train consisting of a motorcar and one car that carried passengers, between Toledo and Zanesville, without having on the train a crew of four men. A full hearing was had before the commission, and after the hearing the commission decided that the railroad company was not violating the provisions of Section 12553, for the reason that the train in question was not governed by that section, but was governed by the provisions of Section 12554, which excepted from the operation of Section 12553 all cars that were operated by electricity. The commission therefore dismissed the application, and the plaintiffs in error prosecuted error to this court.
There is practically no dispute between the parties about the facts of the case. The railroad company was operating daily, over the route and between the termini named, a motorcar to which was attached a car that carried passengers. On the motorcar was a gasoline, motor with a capacity of 250 gallons of gasoline. This gasoline motor was connected with a generator on the motorcar by which electricity was generated, and this electricity as generated was transmitted by proper mechanical connections to the trucks of the car, and served the purpose of propelling the car. There was no connection between the trucks of the car and the gasoline motor. The *339 sole function of the gasoline motor was to run the electric generator, and thereby develop the electric current that was> used and consumed in running the cars.
There are only two questions in the case: First, were the cars in this train propelled by electricity; and, second, did the train, as thus operated, fall within the exceptions of Section 12554?
Under the admitted facts, as they are stated in the brief of counsel for plaintiffs in error, there cannot be any doubt but that the cars in this train, if called a train, are operated by electricity, and it is wholly immaterial whether the power is applied to one car that pulls another connected with it, or whether it be applied to both cars. It is not of the slightest moment that the electricity is generated on board the motorcar. It might, so far as the questions here are concerned, have been generated by a motor located in a power house miles away from the railroad and transmitting the electric power to the cars through a third rail or a connecting .feed or trolley wire. The power employed at the power station might have been water power, steam power, or any other form of power; the sole use of the power being to generate the electricity to move the cars in the train. If anyone had been injured or killed by coming in contact with any of the unprotected electrical appliances that were used to transmit the electricity to the motor on the car, surely no one would contend that the injury had been caused by the gasoline power.
We are not able to appreciate any merit in the contention that the cars in this train were not pro *340 pelled by electricity. We think it is entirely self-evident that they were so propelled.
And coming now to the other question as to whether they were included in the provisions of Section 12554, that question is squarely answered by the plain wording of the statute, which reads as follows:
“The next preceding section shall not apply to trains picking up a car between terminals in this state, or to cars propelled by electricity.”
To hold that that exception is not broad enough to cover the cars in the train in question would surely do violence to every known rule of construction. The fact that the Legislature has used the term “cars,” and at another time used the term “trains,” is not important. Evidently the Legislature intended to exclude from the operation of Section 12553 all cars that were propelled by electricity.
We see no occasion to enter into a discussion of the duties of a fireman on a train. If the Legislature had intended to include in the full-crew provisions cars such as are operated in this case, there would have been no occasion at all for enacting the exception.
On the admitted facts in the case, the finding and order of the Public Utilities Commission must be affirmed.

Order affirmed.

Jones, Matthias and Robinson, JJ., concur.